IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Irondale Industrial Contractors, Inc., | Case No. 3:10 CV 216 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Virginia Surety Company, Inc., | |
| Defendant. | |

### INTRODUCTION

This is an insurance coverage dispute. The parties filed cross Motions for Summary Judgment, fully briefed (Doc. Nos. 34, 36, 39-40), along with Stipulated Facts and Exhibits (Doc. No. 29), after which a record hearing was held (Doc. No. 47). The insured seeks coverage for an underlying lawsuit pending in state court; the insurer has denied coverage based upon an exclusion in the insurance policy.

### BACKGROUND

Virginia Surety Company ("Virginia Surety") issued a workers' compensation and employer liability policy, covering a period from July 1, 2005 to July 1, 2006 ("Policy"), to Irondale Industrial Contractors ("Irondale"). In late April 2006, Miguel Cantu fell and suffered fatal injuries while working for Irondale at its North Star Steel Mill. Yolanda Cantu, as administrator of Miguel's estate, thereafter filed a wrongful death action against Irondale in the Fulton County, Ohio Court of Common Pleas ("Cantu Suit"). She alleges in her Amended Complaint the following (Doc. No. 29-1, ¶¶ 9-10):

> 9. Defendant Irondale . . . with knowledge of a dangerous process, procedure and/or condition, intentionally, purposefully, with deliberate intent, and with substantial certainty did cause fatal injury to Miguel Cantu, with the following acts, including, but not limited to:
>    a. Knowingly created a dangerous work situation in violation of industry and government safety standards and regulations;
>    b. Knowingly allowing and/or requiring Miguel Cantu to be working without adequate equipment and personal protective equipment;
>    c. Knowingly required Miguel Cantu to work as set forth above despite knowing the danger of serious injury was substantially certain to occur under the circumstances;
>    d. Knowingly failed to train and/or adequately train Miguel Cantu and other employees similarly situated in safe ways to perform the job task at issue.
> 10. Defendant Irondale . . . intentionally and/or purposefully and/or with deliberate intent performed or failed to perform acts with the substantial certainty that they would and did cause Miguel Cantu to sustain fatal injuries and damages.

In short, Cantu alleges that Irondale is liable because it "intentionally, purposefully, with deliberate intent, and with substantial certainty did cause fatal injury to Miguel Cantu" (Doc. No. 29-1).

Irondale tendered its defense in the Cantu Suit to Virginia Surety, asserting that the Policy afforded defense and indemnification coverage. Virginia Surety denied it was obligated to do so, and refused to defend or indemnify Irondale. After Virginia Surety denied coverage, Yolanda Cantu focused her claim against Irondale on the theory that: (a) Irondale removed various cables that would have provided greater support for the panel on which the decedent Miguel Cantu was walking when he fell; and (b) the removal of those cables was equivalent to the removal of a safety guard under R.C. 2745.01(C) (Doc. No. 29).

## THE POLICY

Part Two of the Policy, the section of the Policy (Doc. No. 36-4) applicable here, states in pertinent part as follows:

> **A. How This Insurance Applies**
> This employers liability insurance applies to bodily injury by accident . . . Bodily injury includes resulting death.
> 1. The bodily injury must arise out of and in the course of the injured employee's employment by you [Irondale].
> 2. The employment must be necessary or incidental to your [Irondale's] work in [Ohio].
> 3. Bodily injury by accident must occur during the policy period [July 1, 2005 to July 1, 2006].
> \* \* \*
> 5. If you [Irondale] are sued, the original suit and any related legal actions for damages for bodily injury by accident . . . must be brought in the United States of America . . . .
>
> **B. We [Virginia Surety] Will Pay**
> We [Virginia Surety] will pay all sums you [Irondale] legally must pay as damages because of bodily injury to your [Irondale's] employees, provided the bodily injury is covered by this Employers Liability Insurance.

The Policy also provides that Virginia Surety will defend Irondale in litigation under certain circumstances:

> We [Virginia Surety] have the right and duty to defend, at our [Virginia Surety's] expense, any . . . suit against you [Irondale] for damages payable by this insurance . . . We [Virginia Surety] have no duty to defend a . . . suit that is not covered by this insurance. . . .

Additionally, the Policy includes Endorsement No. 6 ("Ohio Endorsement") (Doc. No. 36-3) which makes Part Two of the Policy applicable to Irondale's work in Ohio, but also adds Exclusion 5 ("Ohio Exclusion"). The Ohio Exclusion rests at the heart of the dispute in this case:

> Bodily injury intentionally caused or aggravated by you [Irondale], or bodily injury resulting from an act which is determined to have been committed by you [Irondale] with the belief that an injury is substantially certain to occur . . .

Irondale asserts that Virginia Surety is obligated under the Policy to: (1) reimburse Irondale for the costs and expenses Irondale has incurred in defending the Cantu Suit; and (2) defend, and potentially indemnify, Irondale with respect to the Cantu Suit. Virginia Surety counters that it is

3

neither obligated to defend nor indemnify Irondale because the conduct alleged (that Irondale intentionally, or with substantial certainty, caused Miguel Cantu's fatal injuries) is specifically excluded from coverage pursuant to the Ohio Exclusion.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In a contract action, "[s]ummary judgment ordinarily is appropriate . . . when the language of the contract is unambiguous, or, if the language is ambiguous, where extrinsic evidence leaves no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Sullivan v. Cap Gemini Ernst & Young U.S.*, 518 F. Supp. 2d 983, 994 (N.D. Ohio 2007) (citing *UAW v. BVR Liquidating, Inc*., 190 F.3d 768, 772 (6th Cir. 1999)).

## ANALYSIS

**Choice of Law**

As an initial matter, the parties dispute whether the law of Ohio or Alabama applies to this action. A federal court with diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, *Inc*., 313 U.S. 487, 496 (1941); *Barents*

4

*Navigation Ltd. v. Western Overseas, Inc.*, No. 3:98 CV7606, 1999 U.S. Dist. LEXIS 21211, at *5 (N.D. Ohio 1999).  However, a choice-of-law analysis and determination is only required if there is a conflict between the laws of competing jurisdictions.  *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St. 3d 470, 474 (2006) ("an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken").  "[I]f there is no conflict, the law of the forum state controls."  *Andersons, Inc. v. Consol, Inc.*, 185 F. Supp. 2d 833, 836 (N.D. Ohio 2002) (quoting *Stocklas v. Erie Ins. Group,* 1997 Ohio App. LEXIS 4571, at *8 (Ohio Ct. App. 1997)).

Here, the Court need not engage in a choice-of-law analysis because it finds that the laws of Alabama and Ohio are not in conflict with respect to the interpretation of insurance contracts.  *See Liberty Mut. Ins. Co. v. Petit*, 2010 U.S. Dist. LEXIS 56628, at *9 (S.D. Ohio 2010) (stating that "the parties have not cited any significant difference between Ohio and Alabama law with respect to interpretation of insurance contracts").  Therefore, the Court will apply Ohio law to determine the outcome of this case.

Even if there was a conflict between Alabama and Ohio law, however, this Court would still apply Ohio law.  Under Ohio law, if there is a conflict between competing jurisdictions, then the court must apply the substantive law of the state having the most significant relationship to the transaction and the parties.  *Ohayon v. Safeco Ins. Co. of Ill.*, 91 Ohio St. 3d 474, 477-78 (Ohio 2001).  Factors to be considered include "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties."  *Id.*  Here, Ohio has the most significant relationship with this litigation.  Although Irondale is headquartered in Alabama -- which weighs in favor of applying

Alabama law -- all other factors weigh in favor of applying Ohio law: the policy endorsement at issue here is specific to Ohio, relates only to work occurring in Ohio, covers Irondale's Ohio employees and, importantly, the injury forming the basis of this action occurred in Ohio. Moreover, the resolution of this case is driven by the interpretation of the Ohio intentional tort statute, R.C. 2745.01(C).

**The Ohio Intentional Tort Statute**

Irondale concedes that the Policy clearly "does not cover claims wherein Irondale intentionally caused the injury alleged" (Doc. No. 34 at 8). Nonetheless, Irondale argues that Virginia Surety has an obligation to provide coverage because the Cantu Suit now alleges that the removal of various cables under R.C. 2745.01(C) is equivalent to the removal of a safety guard, and while R.C. 2745.01(C) creates a "rebuttable presumption that the removal . . . was committed with intent to injure," it does not require a showing or finding of intent to injure.

Ohio's intentional tort statute, R.C. 2745.01, sets forth employer liability as follows:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

> (D) This section does not apply to claims arising during the course of employment involving discrimination, civil rights, retaliation, harassment in violation of Chapter 4112. of the Revised Code, intentional infliction of emotional distress not compensable under Chapters 4121. and 4123. of the Revised Code, contract, promissory estoppel, or defamation.

The statute, amended in 2005, added the "rebuttable presumption" in Subsection (C). Irondale argues that liability under Subsection (C) does not fall within the Ohio Exclusion.[1]

**Insurance Coverage**

This Court's analysis begins with well-established principles applicable to the interpretation of insurance policies. The duty of an insurance company to defend an action against an insured is defined by the scope of the allegations of the claim. *Owners Ins. Co. v. Nationwide Ins. Co.*, 167 Ohio App. 3d 276, 281 (2006). "[When] the complaint brings the action within the coverage of the policy, the insurer is required to make the defense, regardless of the ultimate outcome of the action

---

[1]
>
> The respective positions of the parties were explained at the hearing as follows (Tr. pp. 25-26):
>
> | | |
> |---|---|
> | Mr. Travis: | Mr. Cantu's estate has to allege and prove substantial certainty in order to have a cause of action. . . . If they prove it, there's no coverage. And there's no possibility of coverage under this policy because that's the only way they can recover. |
> | The Court: | Your position is it doesn't matter which subsection may apply because, in the end, substantial certainty is a requirement of all [subsections] and the policy excludes that kind of recovery. |
> | Mr. Travis: | Exactly right Your Honor. |
> | The Court: | And your position, Drew, is that if it's under A and B, the exclusion applies, but if it's under C it doesn't apply? |
> | Mr. Wachtman: | That's correct. |
> | The Court: | The battle lines have been drawn. |

7

or its liability to the insured." *Id.* The duty to defend may exist even though the allegations are groundless, false or fraudulent. *Erie Ins. Exch. v. Colony Development Corp.*, 136 Ohio App. 3d 406, 412 (1999). Even when the action is not clearly within the policy coverage, but the allegations could arguably or potentially state a claim within the policy coverage, the insurer still has a responsibility to defend the entire action. *Sanderson v. Ohio Edison Co.*, 69 Ohio St. 3d 582, 586 (1994); *Willoughby Hills v. Cincinnati Ins. Co.*, 26 Ohio App. 3d 146 (1986). "Only if there is no possibility of coverage under the policy based on the allegations in the complaint will the insurer not have a duty to defend the action." *Erie Ins. Exch.*, 136 Ohio App. 3d at 413.

Here, the Complaint alleges that Irondale "intentionally, purposefully, with deliberate intent, and with substantial certainty did cause fatal injury to Miguel Cantu" (Doc. No. 29-1). Although neither the parties nor this Court have been able to locate a case interpreting the application of R.C. 2745.01(C) to an insurance policy, numerous Ohio court decisions have held that R.C. 2745.01 does not obligate insurance carriers with similar policy exclusions to provide coverage. *See, e.g., Nice v. Wheeling Pittsburgh Steel Corp.*, 619 F. Supp. 2d 487, 491 (S.D. Ohio 2008); *OSI Sealants, Inc. v. Wausau Underwriters Ins. Co.*, 2005 Ohio 2528, ¶ 26 (Ohio Ct. App. 2005); *Comcorp Techs. v. Crum & Forster Ins.*, 2002 Ohio 7104 (Ohio Ct. App. 2002). Even assuming the removal of cables is the equivalent of the removal of a safety device, the Cantu allegations clearly fall within the Ohio Exclusion.

Irondale argues the scope of R.C. 2745.01(C) changes this outcome because Irondale assumes it could be held liable for the wrongful death of Cantu without *intending* to cause injury to him. However, Subsection (C) creates a rebuttable presumption that an employer's removal of certain safety equipment *is* evidence of intent to injure. Subsection (A) defines an intentional tort, and later

8

Subsections (B) and (C) refine that definition. Subsection (C) is not a separate tort, it merely provides a legally cognizable example of "intent to injure."

No matter how Yolanda Cantu spins her claim, the essence is that Irondale is liable under the Ohio intentional tort statute. The Policy excludes such a claim, stating it does not cover injuries "intentionally caused or aggravated by you [Irondale]," or those "committed by you [Irondale] with the belief that an injury is substantially certain to occur." This Policy language parrots R.C. 2745.01, including Subsection (C). Irondale is not entitled to coverage simply because the Policy does not incorporate the exact language of Subsection (C). *See Arch Specialty Ins. Co. v. J. G. Martin*, 2007 U.S. Dist. LEXIS 84627, *19 (N.D. Ohio 2007) ("there is no requirement that the exclusion in the policy must be framed in the language of the legal standard"). Accordingly, there are no circumstances in this case where Irondale is entitled to coverage under the Policy.

**Illusory Coverage**

Additionally, Irondale argues that the Ohio Endorsement is illusory, and therefore unenforceable, because it does not apply to any obligation imposed by workers' compensation laws and also excludes coverage for injuries caused by intentional torts. These are the only recognized claims by an employee against an employer in Ohio.

The Ohio Endorsement may limit coverage to Irondale, but "[w]hen some benefit to the insured is evident from the face of the endorsement, the endorsement is not an illusory contract." *State Auto Ins. Co v. Golden*, 125 Ohio App. 3d 674, 678 (Ohio Ct. App. 1998). The Policy here provides some coverage to Irondale. For example, paragraph B1 of Part Two states that Virginia Surety must provide coverage if Irondale is found liable to a third party for damages resulting from injury to one of Irondale's employees (Doc. No. 34-1, p. 3). Also, coverage is provided when an

9

employee's relative sues for the relative's damages resulting from the employee's injury (Doc. No. 34-1, p. 4).

Furthermore, Virginia Surety must provide coverage if Irondale is sued by an employee for negligently causing the employee's injuries. Such a suit would be covered by workers' compensation, and therefore subject to summary dismissal, requiring Virginia Surety to defend Irondale until such a dismissal. Virginia Surety concedes as much (Tr. p. 27).

As these examples demonstrate, the face of the Policy provides some coverage to Irondale and the exclusion for intentional torts could not be more clear. The policy exclusions for Ohio and other states will turn on each state's law, creating different coverages depending on the particular state laws. This limited coverage in the Ohio Endorsement is reflected in the premium cost to Irondale, for which Irondale paid nothing (Tr. p. 27; Doc. No. 36-3, p. 1 -- "Premium NA"). *See Lakota v. Westfield Ins. Co.,* 132 Ohio App. 3d 138, 143 n.4 (Ohio Ct. App. 1998) (finding that the insured should not be surprised that its coverage "might be modest in light of the fact that the total annual cost of the coverage was only $250").

## Conclusion

For the foregoing reasons, Irondale's Motion for Summary Judgment (Doc. No. 34) is denied and Virginia Surety's Motion for Summary Judgment (Doc. No. 36) is granted.

IT IS SO ORDERED.

                                                s/ *Jack Zouhary*
                                                JACK ZOUHARY
                                                U. S. DISTRICT JUDGE

December 8, 2010